UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
ESTEBAN GUTIERREZ,

       **Plaintiff,**

 -against-             15-cv-9907 (ALC)

CITY OF NEW YORK, ET AL.,      <u>**OPINION & ORDER**</u>

       **Defendants.**

------------------------------------------------------------------ x

**ANDREW L. CARTER, JR., District Judge:**

   Plaintiff Esteban Gutierrez (hereinafter, "Plaintiff" or "Mr. Gutierrez") brings this action under 42 U.S.C. § 1983 against the City of New York, the New York Police Department ("NYPD"), and Police Officers Kenneth Ayala, Joseph Ayala, and Christopher T. Vaccaro (collectively, "Defendants"). Plaintiff alleges multiple violations of his federal constitutional rights including false arrest, false imprisonment, malicious prosecution, and conspiracy, along with common law intentional infliction of emotional distress and negligence claims.

## PROCEDURAL HISTORY

   Plaintiff initiated this action on December 19, 2015. ECF No. 1. Plaintiff's Complaint was filed on March 2, 2016. ECF No. 14 ("Compl."). Defendants answered the Complaint on June 27, 2016. ECF No. 20. A mediation session was held on September 28, 2016, however, the Parties were unable to resolve the dispute. ECF No. 21. The Parties proceeded to discovery under the guidance of Magistrate Judge James L. Cott. ECF Nos. 24-29. On February 15, 2018, Defendants filed a Letter Motion with the Court requesting a pre-motion conference to discuss their anticipated motion for partial summary judgment. ECF No. 30. On February 28, 2018, the Court denied Defendants' request for a pre-motion conference and granted Defendants leave to

file their Partial Motion for Summary Judgment. ECF No. 32. Defendants filed their Motion, along with supporting documents, on March 28, 2019. ECF Nos. 33-36. After the Court granted a request by Plaintiff for an extension, Plaintiff filed his Opposition to Defendants' Motion on May 21, 2018. ECF Nos. 39-43. Defendants replied to Plaintiff's Opposition on May 29, 2018. ECF No. 44. Defendants' Motion is deemed fully briefed. After careful consideration, Defendants' Motion for Partial Summary Judgment is hereby **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The circumstances giving rise to this case are largely undisputed. *See* Pl's. Resp. Defs' R. 56.1 Stmt. ("Pl's 56.1 Resp."). On January 5, 2013, Mr. Gutierrez was arrested in the Bronx, New York. *Id.* ¶ 1. The arresting officers were Defendants Kenneth Ayala, Joseph Ayala, and Christopher Vaccaro. *Id.* ¶ 2. Plaintiff was arraigned on January 6, 2013, and he remained in custody until January 10, 2013. *Id.* ¶ 3. On January 28, 2013, a Bronx grand jury returned an indictment charging Mr. Gutierrez with Criminal Possession of a Controlled Substance in the Fourth, Fifth and Seventh Degrees and Criminal Possession of a Weapon in the Fourth Degree. *Id.* ¶ 10; *see* Garman Decl. Ex. D ("Criminal Court Complaint"). The charges in the Criminal Court Complaint were based on information provided to Defendant K. Ayala from Defendants J. Ayala and Vaccaro. Pl's 56.1 Resp. ¶ 6. Defendant J. Ayala claims that he "observed a gravity knife fall out of plaintiff's pants leg" and Defendant Vaccaro claims that he "observed plaintiff in possession of a plastic twist containing a rock-like substance believed to be crack cocaine. *Id.* ¶ 7. Plaintiff was then searched, arrested, and placed in the police van. Garman Decl. Ex. C, Gutierrez Dep. 47:14-17, 48:21-49:1 ("Gutierrez Dep."). However, Mr. Gutierrez claims that at no point did Defendants see or seize any weapon or any drugs from his person during the arrest.

2

*Id.* ¶ 8; *see* Gutierrez Dep. 49:7-20, 53:18-23. On November 2, 2015, after almost two years of court proceedings, all charges against Plaintiff stemming from his January 5, 2013 arrest were dismissed. *Id.* ¶ 11; Garman Decl. Ex. G ("Certificate of Disposition").

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

## DISCUSSION

### I. There are Genuine Issues of Material Fact Pertaining to Plaintiff's Malicious Prosecution Claim that Preclude Summary Judgment

To prevail on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must demonstrate four things. A plaintiff must show (1) that the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) that the proceeding was begun with malice, and (4) the matter was terminated in plaintiff's favor. *See Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010).[1] In general, "a grand jury indictment gives rise to a presumption that probable cause exists."[2] *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (citing *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006)). Probable cause is a complete defense to a § 1983 malicious prosecution claim. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). However, "the presumption may be rebutted by evidence of ... fraud, perjury, or the suppression of evidence." *Rentas*, 816 F.3d at 220; *see Savino*, 331 F.3d at 72. Additionally, a "plaintiff's testimony alone may be independently sufficient to raise a genuine issues of material fact" as it relates to probable cause. *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (citing *Rentas*, 816 F.3d at 221). Regarding the third element, "actual malice can be inferred when a plaintiff is prosecuted without probable cause." *Rentas*, 816 F.3d at 221 (citing *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)).

Here, Mr. Gutierrez has demonstrated that there are genuine issues of material fact pertaining to his malicious prosecution claim. Plaintiff has demonstrated that Defendants initiated a prosecution against him. *See* Criminal Court Complaint; Pl's 56.1 Resp. ¶ 6. Plaintiff

---

[1] It is undisputed that the first and fourth elements of a malicious prosecution have been met in this case.
[2] In *Lanning v. City of Glens Falls*, the Second Circuit indicated that "federal law defines the elements of a § 1983 malicious prosecution claim," rather than the previously applied state law. 908 F.3d 19, 25 (2d Cir. 2018). While the presumption that a grand jury indictment gives rise to probable cause has its origins in New York state law, the Second Circuit has not indicated that it will alter that standard. Thus, the presumption is applied here.

4

has also demonstrated that the matter was terminated in his favor. *See* Certificate of Disposition. Furthermore, Defendant's testimony indicates that there is a genuine dispute of material fact pertaining to Defendant K. Ayala's testimony and the basis for which the grand jury indictment was procured. *See* Compl. ¶ 20-21. While Defendant is correct that Plaintiff has not established exactly what went on in the grand jury, Plaintiff need only demonstrate a genuine issue of material fact. *See* Def's Mem. Supp. Mot. p. 7 ("Defs' Mem."); *see Anderson*, 477 U.S. at 248. Defendants claim that Plaintiff was searched because Defendant J. Ayala "observed a gravity knife fall out of plaintiff's pants leg and Vaccaro observed plaintiff in possession of a plastic twist containing a rock-like substance believed to be crack cocaine." Pl's 56.1 Resp. ¶ 7; *see* Criminal Court Complaint. Plaintiff claims that at no point did he have any weapons or drugs on his person. *Id.* ¶ 8. Furthermore, there is no evidence that any drugs or weapons were produced as a result of the search. Plaintiff also alleges that Defendant K. Ayala's testimony regarding his observations was deemed not credible, and ultimately, all charges against Mr. Gutierrez were dismissed. Compl. ¶ 21. Here, even without knowing exactly what went on in the grand jury proceedings, viewing the evidence in the light most favorable to Mr. Gutierrez, the evidence is such that a reasonable juror could find that the grand jury indictment was procured by way of fraud, perjury, or the suppression of evidence, thus successfully rebutting the presumption of probable cause. *See Anderson*, 477 U.S. at 248; *Rentas*, 816 F.3d at 220. It follows, then, that there is a genuine dispute of material fact as to whether the proceedings were initiated with malice. *Rentas*, 816 F.3d at 221. Thus, there remains a genuine dispute of material fact as to two of the four elements of a § 1983 malicious prosecution claim and summary judgment is not appropriate.

### a. At this Stage in the Proceedings, Defendant K. Ayala is not Entitled to Qualified Immunity

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known ... or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). Qualified immunity protects officials from liability when "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001).

Here, there is a genuine issue of material fact regarding Defendant K. Ayala's involvement in the alleged conspiracy, false arrest, and malicious prosecution. As alleged, the facts indicate a genuine dispute of material fact as to whether Plaintiff was arrested without probable cause. *See* Pl's 56.1 Resp.; Gutierrez Dep. A reasonable juror could conclude that Defendant K. Ayala was involved in violating Plaintiff's clearly established rights, and that it was not objectively reasonable for him to believe that his actions were lawful at the time. *See Cerrone*, 246 F.3d at 199. Thus, Defendant K. Ayala is not entitled to the protections of qualified immunity at this stage.

### II. There are Genuine Issues of Material Fact Pertaining to Plaintiff's Section 1983 Conspiracy Claim that Preclude Summary Judgment

For a conspiracy claim under 42 U.S.C. § 1983 to survive summary judgment, a plaintiff must demonstrate: (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done

in furtherance of that goal causing damages. *Ostensen v. Suffolk County*, 236 Fed.Appx. 651, 653 (2d Cir. 2007) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Here, Plaintiff alleges that the officers conspired to deprive him of his liberty by arresting, detaining, and prosecuting him without probable cause. Compl. As alluded to, it is undisputed that Defendant K. Ayala signed the criminal complaint. Pl's 56.1 Resp. ¶ 5. Further, it is undisputed that Defendant K. Ayala relied on the information provided by Defendants J. Ayala and Vaccaro in constructing the complaint. *Id.* ¶ 6. Genuine questions remain regarding the extent of any agreement, the knowledge of each Defendant, and their intentions in arresting Plaintiff. These are questions of fact that must be reserved for a jury. *See Jeffreys*, 426 F.3d at 553-54.

Additionally, Defendants claim that the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claims. Defs' Mem. p. 18. "Under the intracorporate conspiracy doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of [their] employment, are legally incapable of conspiring together." *Reich v. Lopez*, 38 F.Supp.3d 436, 463 (S.D.N.Y. 2014) (citing *Little v. City of New York*, 487 F.Supp.2d 426, 441-42 (S.D.N.Y. 2007)); *see Hermann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978). The Second Circuit has recognized the applicability of the intracorporate conspiracy doctrine in the context of § 1985 cases, but it has not, however, extended the doctrine to § 1983 cases. *See Terry v. Huse*, 2018 WL 4682784, n. 12 (S.D.N.Y. Sept. 28, 2018); *Ali v. Connick*, 136 F.Supp.3d 270, 282 (E.D.N.Y. 2015). Thus, the Court will not apply the intracorporate conspiracy doctrine in this case.[3]

---

[3] Even if the intracorporate conspiracy doctrine applied, Plaintiff would likely qualify for the exception by alleging that the defendants had a "personal conspiratorial purpose, wholly separate and apart from the entity." *Ali*, 136 F.Supp.3d at 282; *Reich*, 38 F.Supp.3d at 463.

### III. Plaintiff Failed to Adhere to Notice of Claim Requirements Regarding his State Law Tort Claims

"New York law requires that plaintiffs asserting a tort claim against a municipality file a notice of claim within ninety days after the claim arises." *Clark v. City of New York*, 2018 WL 4372671, *5 (S.D.N.Y. Sept. 13, 2018) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)). State notice-of-claim statutes apply to state law claims in federal court. *See Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); *see also Bradshaw v. City of New York*, 2017 WL 6060781, *15 (S.D.N.Y Dec. 7, 2017) (citing *Santiago v. City of New York*, 697 Fed. Appx. 36, 38 (2d Cir. 2017)). In general, "a notice of claim is a condition precedent to suit against the City or its employees." *Bradshaw*, 2017 WL 6060781 at *15. Failure to comply with notice-of-claim statutes and requirements "ordinarily requires dismissal for failure to state a cause of action." *Id.* Under New York General Municipal law, a notice of claim must be filed "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e.

Here, Plaintiff was arrested on January 5, 2013. Pl's 56.1 Resp. ¶ 1. Plaintiff was released from custody on or around January 11, 2013. Compl. ¶ 25. Plaintiff filed a Notice of Claim on January 16, 2015. Garman Decl. Ex. H ("Notice of Claim"). Plaintiff's Notice of Claim was filed more than ninety days after any alleged injury. *See* N.Y. Gen. Mun. Law § 50e; Notice of Claim. Thus, Plaintiff failed to adhere to the statutory requirements pertaining to notice. *Id.* Plaintiff claims that a late notice "is a nullity" because GML § 50e-5 allows for late notice filing if leave is granted by the court. Pl's Mem. Supp. Mot. Opp. P. 11 ("Pl's Mem."). While that may be correct, at no point did Plaintiff seek leave from this Court to file a late notice of a claim. Further, while, the relevant arrest in this case occurred on January 5, 2013, this case was filed on December 19, 2015. Pl's 56.1 Resp. ¶ 1; ECF No. 1. Plaintiff has indicated no reasonable excuse for the failure to serve a timely notice of a claim. Thus, if it is Plaintiff's intention for the Court

to render his Opposition to Defendant's Motion for Summary Judgment as a request for leave to allow a late filing of a notice of claim, Plaintiff's request is hereby **DENIED**.

IV. **Plaintiff Does Not Have a Viable Claims Against the New York Police Department or Against the City of New York**

Plaintiff brings claims against the NYPD and the City of New York. The NYPD is a non-suable agency of the City, and thus the claims against it must be dismissed. *Jenkins v. City of New York*, 478 F.3d 76, 93 n. 19 (2d Cir. 2007) (citing *Wray v. City of New York*, 340 F.Supp.2d 291, 303 (E.D.N.Y. 2004)). Regarding the City of New York, local governing bodies can be sued directly under 42 U.S.C. § 1983 when a plaintiff demonstrates unconstitutional action implemented from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978). However, liability does not exist "solely because [a municipality] employs a tortfeasor." *Id.* at 691. Thus, a plaintiff must "plausibly allege that the violation of his constitutional rights was caused by an official policy or custom of the municipality." *Bennett v. City of New York*, 425 Fed.Appx. 79, 81 (2d Cir. 2011) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)). While a municipalities failure to train and supervise its employees is a permissible theory of liability under § 1983, in order for a claim to survive summary judgment under the "failure to train" theory, a plaintiff "must identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Jenkins*, 478 F.3d at 94 (citing *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)).

Here, while Mr. Guttierez alleges, on multiple occasions, that the City has a policy or custom allowing and encouraging his rights to be violated, there is no evidence in the record of any deficiency in the city's training nor any stated policies or practices that supported the

9

conduct of the Defendant officers in this case. Plaintiff's allegations on this matter are conclusory. Thus, Plaintiff's claims are dismissed against the NYPD and the City of New York.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is hereby **GRANTED** regarding Plaintiff's claims against the NYPD and the City of New York. Further, Defendants' Motion is hereby **GRANTED** as to Plaintiff's common law tort claims. Defendants' Motion is otherwise **DENIED**.

**SO ORDERED.**

**Dated:**     **March 29, 2019**
              **New York, New York**

                                        **ANDREW L. CARTER, JR.**
                                        **United States District Judge**